HOLDRIDGE, J.
This is a tort suit wherein the plaintiffs seek to recover damages for the decedent's lung cancer and death allegedly caused in total or in part by his exposure to radioactive dust from cleaning oilfield pipes. A motion for summary judgment was granted in favor of the defendants dismissing the plaintiffs' claims with prejudice due to a lack of proof of medical causation because of the fact that the decedent was a lifelong smoker. The plaintiffs appeal the granting of the motion for summary judgment. Because there are genuine issues of material fact, the judgment of the district court is reversed and the matter is remanded for further proceedings.
FACTUAL AND PROCEDURAL HISTORY
After Riley Hickman developed lung cancer, he sued numerous oil and gas companies, two oilfield pipe-cleaning contractors, and a supervisor alleging liability based on his exposure to "naturally occurring radioactive material" (NORM) from his work cleaning oilfield pipes.[1] According to the petition, NORM forms as mineral scale deposits inside pipes when they are used in oil and gas wells and the deposits must be cleaned out so the pipes can be reused. During the cleaning process, the NORM scale turns into radioactive dust, which Riley inhaled while working mainly at the French Jordan pipe facility during 1966, 1967, 1969, and 1987 through 1991. Riley was diagnosed with large cell neuroendocrine carcinoma on December 20, *1100 2012, and filed suit on January 22, 2013. He died on August 28, 2013, during the pendency of his action. A supplemental and amending petition was filed, substituting and adding his surviving spouse, Deborah Hickman, and children, Belinda, Daniella, and Samantha Hickman, as plaintiffs. The oil company defendants involved in this appeal are Shell Offshore Inc., SWEPI LP, and Shell Oil Company (collectively "Shell").
On October 21, 2015, Shell filed a motion for summary judgment regarding lack of proof of medical causation. Shell asserted that absent proof that it was more probable than not that Riley's lung cancer was caused by exposure to NORM based on medical evidence, the plaintiffs could not establish the requisite element of medical causation necessary to support a claim for damages. In its motion for summary judgment, Shell contended that Riley, a lifelong cigarette smoker, contracted lung cancer due to his smoking. It alleged that the testimony of Dr. Patricia M. Williams, a toxicologist, who determined that Riley's lung cancer was caused totally or partially by his exposure to the constituents of NORM pipe scale, could not provide medical causation. The motion for summary judgment was originally set for hearing on November 13, 2015.
On October 27, 2015, Shell filed a motion to exclude or limit the testimony, opinions, and expert report of Dr. Williams. Shell alleged that her opinions were unsupported, her testimony and report were filled with factual and scientific errors, and her methodology was unreliable under La. C.E. art. 702 and the requirements of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), Cheairs v. State ex rel. Dep't of Transp. & Dev., 2003-0680 (La. 12/3/03), 861 So.2d 536, 541, and State v. Foret, 628 So.2d 1116, 1121 (La. 1993). Shell argued that Dr. Williams was a toxicologist, not a medical doctor, such that her opinions as to specific medical causation as to Riley's very rare form of lung cancer should not be allowed, particularly since she disregarded the scientific literature and contrary opinions held by Riley's treating physicians. According to Shell, Dr. Williams' opinions on general and specific causation were based on flawed methodology because they were not based on peer-reviewed studies or tested premises, she ignored relevant scientific information, and she used an unsound method to compare smoking to radium exposure. Shell's motion was originally set for hearing on November 9 and 10, 2015, before the hearing on the motion for summary judgment.
The district court conducted the hearing on Shell's motion for summary judgment on November 9, 2015, the same day that the motion to exclude or limit Dr. Williams' testimony was scheduled to be heard. Apparently, Shell's motion to exclude Dr. Williams' testimony was not heard since the record does not contain a transcript of a hearing on the motion to exclude or limit Dr. Williams' testimony, nor does it contain a minute entry referencing that motion.[2] The district court took the summary judgment motion under advisement and then signed a judgment on November 17, 2015 granting the motion for summary judgment and dismissing with prejudice the Hickmans' claims against Shell. The Hickmans filed a motion for new trial, which the district court denied. From the district court's dismissal of their action, the Hickmans appeal.
On appeal, the Hickmans raise three assignments of error: that the district *1101 court erred by adding an additional requirement to causation to the actual damages under the duty/risk cause-in-fact element with proof of actual damages by medical evidence; that the district court erred because it inappropriately evaluated expert credibility and weighed expert opinion on a motion for summary judgment; and that the district court erred in disregarding the expert opinions of Dr. Williams without analyzing the reliability of her opinions in an evidentiary hearing.
DISCUSSION
We initially address the jurisdictional issues regarding this appeal. Due to the apparent untimeliness of the motion for new trial in this record, this court issued a rule to show cause regarding the timeliness of the appeal.[3] In response, the Hickmans filed an unopposed motion to supplement the record with a copy of the motion for new trial, which showed that it was submitted by fax transmission on December 4, 2015. The Hickmans followed up with the filing of the original copy of the motion for new trial on December 7, 2015 as required by La. R.S. 13:850. Because the motion for new trial was timely filed, this appeal is timely and will be maintained. The unopposed motion to supplement is also granted.
Next we address the motion to dismiss the appeal filed by Shell. Shell contends that because the Hickmans in their motion for appeal appeared to appeal the denial of their motion for new trial, rather than the granting of Shell's motion for summary judgment, the motion for appeal filed outside of the thirty-day period for seeking review of the denial of a motion for new trial is untimely and should be dismissed. A judgment denying a motion for new trial is an interlocutory order and is normally not appealable. See La. C.C.P. art. 2083(C). However, when a motion for appeal refers by date to the judgment denying a motion for new trial, but the circumstances indicate that the appellant actually intended to appeal from the final judgment on the merits, the appeal should be maintained as being taken from the judgment on the merits. See Smith v. Hartford Accident and Indemnity Company, 254 La. 341, 223 So.2d 826, 828-829 (1969). See also Byrd v. Pulmonary Care Specialists, Inc., 2016-0485 (La. App. 1 Cir. 12/22/16), 209 So.3d 192, 195 ; Thomas v. Comfort Center of Monroe, LA, Inc., 2010-0494 (La. App. 1 Cir. 10/29/10), 48 So.3d 1228, 1233 ; Dural v. City of Morgan City, 449 So.2d 1047, 1048 (La. App. 1 Cir. 1984). In this case, it is clear from the assignments of error that the Hickmans sought to appeal from the final judgment that granted summary judgment and dismissed all claims against Shell. The Hickmans' mistake in listing the date of the wrong judgment in their motion for appeal is insufficient grounds for the dismissal of their appeal, particularly since appeals are favored and will be dismissed only when the grounds are free from doubt. Dural, 449 So.2d at 1049.
We reject Shell's contention that because the motion for appeal referring to the motion for new trial was filed outside the thirty-day delay required for writ applications, it was not timely and cannot be considered as a motion for appeal of the dismissal of the suit. The motion for appeal was filed within the applicable sixty-day devolutive appeal delay.
*1102 Jones v. Zumo, 479 So.2d 655, 656-67 (La. App. 1 Cir. 1985), and Dural, 449 So.2d at 1048-49, involved motions for appeal inadvertently referring to interlocutory rulings, such as the denial of the motion for judgment notwithstanding the verdict and alternatively a motion for new trial and the denial of a motion for new trial. In Jones and Dural, the dates given in the opinions indicate that the motions for appeal were not filed within the thirty-day delay for filing writs, but were filed within the sixty-day devolutive appeal delay; these appeals were maintained because the references to the interlocutory rulings were inadvertent. Likewise, in the instant case, the motion for appeal of the grant of the summary judgment and dismissal of the suit was filed within the sixty-day devolutive appeal delay. Since the appeal was timely filed, the inadvertent referral to the wrong judgment does not make the appeal untimely. Thus, the merits of the summary judgment of November 17, 2015, are properly before us.
In considering the Hickmans' assignments of error, we pretermit the first assignment of error based on our finding that had the district court properly considered Dr. Williams' expert opinion, as well as the opinions of other medical doctors, it would have found that there was a genuine issue of material fact as to the medical causation of the decedent's illness.
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Samaha v. Rau, 2007-1726 (La. 2/26/08), 977 So.2d 880, 882 ; Driver Pipeline Co., Inc. v. Cadeville Gas Storage, LLC, 49,375 (La. App. 2 Cir. 10/1/14), 150 So.3d 492, 496, writ denied, 2014-2304 (La. 1/23/15), 159 So.3d 1058. A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, admitted for purposes of the motion, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2) ;[4] Bolton v. Farmers Ins. Co., 2013-1563 (La. App. 1 Cir. 10/27/14), 156 So.3d 1179, 1182.
The burden of proof to show that no material factual issue exists is on the mover. However, if the party moving for summary judgment will not bear the burden of proof at trial, the mover is not required to negate all essential elements of the adverse party's claim. Rather, the mover must point out to the trial court that there is an absence of factual support for one or more elements essential to the adverse party's claim. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(C)(2) ; Gaspard v. Safeway Ins. Co., 2014-1676 (La. App. 1 Cir. 6/5/15), 174 So.3d 692, 694, writ denied, 2015-1588 (La. 10/23/15), 184 So.3d 18. Appellate courts review summary judgments de novo, under the same criteria that govern a district court's consideration of whether summary judgment is appropriate. Gaspard, supra.
In granting the motion for summary judgment, the district court stated in its reasons for judgment:
*1103 Although neither party is required to match, expert for expert, the other side's case, a party cannot create a genuine issue of fact merely by presenting an expert witness who is willing to express an unsupported opinion that favors the party's position. What is necessary is that the parties seeking to defeat summary judgment demonstrate the existence of a material issue of fact by presenting competent evidence thereon.
Plaintiffs suggest that the report and deposition testimony of their expert toxicologist, Patricia Williams, Ph.D., sufficiently establish a triable issue of fact on the question of injury causation. However, the particular nature of Mr. Hickman's illness and its relation or non-relation to his alleged occupational exposure to NORM is far beyond the vernacular of general knowledge of the average layman. The Court agrees with Shell that expert medical testimony is essential link the large cell neuroendocrine carcinoma from which Mr. Hickman expired to his alleged radiation exposure. Plaintiffs presented no competent medical evidence from any of Mr. Hickman's many treating physicians, which suggests that ionized radiation is, more likely than not, a cause or a contributing factor of his particular illness.
The district court conducted the hearing on Shell's motion for summary judgment on November 9, 2015, the same day that the motion to exclude or limit Dr. Williams' testimony was scheduled. At the hearing on the motion for summary judgment, Shell's counsel indicated that for the purposes of the summary judgment motion, Shell was not objecting to the admission of Dr. Williams' opinions, did not want the district court to conduct a La. C.C.P. art. 1425(F) hearing, and indicated that Dr. Williams could give her opinion that Riley was at an increased risk for lung cancer due to radiation exposure, but that her opinion was not enough to meet the Hickmans' burden of proof. Shell contended that the Hickmans had to prove with medical evidence that Riley's cancer was more probable than not caused by NORM.
At the hearing, Shell was unclear as to whether it was challenging the qualifications of Dr. Williams. Shell pointed out that Dr. Williams did not have an advanced graduate degree in toxicology or any degree in toxicology. In discussing case law, Shell cited a case wherein Dr. Williams testified and where the Fifth Circuit Court of Appeal found her incompetent to give causation testimony. Shell attacked Dr. Williams' methodology in its memoranda.[5] The Hickmans argued that Dr. Williams as a toxicologist could present medical evidence establishing that what Riley was exposed to at French Jordan could be a substantial contributing cause of the cancer, with which he was diagnosed by his medical doctors. The Hickmans pointed to other cases where Dr. Williams was allowed to give medical evidence. The Hickmans' counsel indicated that Shell would later challenge Dr. Williams under Daubert. The district court commented that Daubert was a different issue and the court was dealing with whether Dr. Williams could give a medical opinion as to causation, to which the Hickmans responded that the Louisiana courts have never said that only a medical doctor can give medical evidence.
*1104 A review of the record shows that the motion to exclude or limit Dr. Williams' testimony was never heard, nor was the request for a hearing waived.[6] Any challenge to the qualifications or methodology of a party's expert should be filed in a pre-trial motion in accordance with La. C.C.P. art. 1425(F). Article 1425(F) sets out in detail the procedure that should be followed to challenge the qualifications of an expert or the methodology used by the expert in reaching his opinion.[7] In this case, the issue is whether the opinion testimony of Dr. Williams along with the medical testimonies of the doctors create a genuine issue of material fact as to the question of whether the decedent's lung cancer could have been caused in total or in part from his exposure to radioactive dust. The issue of competent medical evidence in this case is interrelated with Dr. Williams' qualifications and methodology. Specifically, whether Dr. Williams had the qualifications and used the correct methodology to render an opinion as to whether Riley's exposure to radioactive materials could be a cause or contributing cause to his illness and death is a determination that can only be determined after an evidentiary hearing in accordance with article 1425(F). Shell argues that a Daubert ( article 1425(F) ) hearing would be pointless because Dr. Williams cannot offer competent medical testimony because she is not a medical doctor. However, in her report and deposition, Dr. Williams states that it is her opinion that Riley's radiation exposure increased his risk of lung cancer. This is a medical opinion to which there was no objection nor article 1425(F) hearing to exclude.
Contrary to the district court's reasons, the opinion of Dr. Williams must be accepted as competent evidence. If a district court conducts no Daubert analysis of any kind, the exclusion of the expert's evidence without an evaluation of the relevant reliability factors is legal error. Robertson v. Doug Ashy Building Materials, Inc., 2010-1552 (La. App. 1 Cir. 10/4/11), 77 So.3d 339, 355. In Guardia v. Lakeview Regional Medical Center, 2008-1369 (La. App. 1 Cir. 5/8/09), 13 So.3d 625, 631 this court held that the district court erred in a medical malpractice case on a motion for summary judgment in disregarding the affidavits and deposition testimony of a registered nurse without first holding a hearing on the motion in limine to strike her testimony based on her qualifications to testify. Similarly, if the expert's affidavit and opinion are accepted without objection, the district court cannot make credibility determinations, evaluate testimony, or otherwise weigh evidence in determining whether the evidence is competent or creates a genuine issue of material fact. See Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La. 7/5/94), 639 So.2d 730, 751 ; Janney v. Pearce, 2009-2103 (La. App. 1 Cir. 5/7/10), 40 So.3d 285, 289, writ denied, 2010-1356 (La. 9/24/10), 45 So.3d 1078. Since Dr. Williams opinion was not challenged in an article 1425(F) motion and hearing, it must be accepted by this court. Thus, we must assume that the opinion expressed by Dr. Williams in her testimony and report is credible and competent. See Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La. 2/29/00), 755 So.2d 226, 236 ; Janney, 40 So.3d at 289.
*1105 In her report, Dr. Williams states that it is her opinion that Riley's radiation exposure increased his risk of lung cancer. Dr. Williams opinion is not contradicted by any medical doctor. Dr. Manly Jordan, a pulmonologist who treated Riley, opined that ionizing radiation could be a risk factor, but advised that he was unaware of any synergistic effect between smoking and substances other than asbestos. Dr. Baham Sabbaghiam, a specialist in general surgery who evaluated Riley's lung mass, also stated that he would need more particulars before he could opine whether the exposure to ionizing radiation could be a cause or contributing factor to Riley's cancer. Dr. Richard Edwards, a family practitioner who treated Riley, also recognized that smoking was "definitely a large risk factor", but that work history exposure would be another consideration.
The testimonies of the medical doctors along with the testimony of Dr. Williams creates a genuine issue of material fact as to whether the decedent's exposure to radioactive dust was a factor in causing his lung cancer. The Hickmans burden at summary judgment is not the same burden that is necessary for them to prevail at the trial on the merits. In order for the burden to shift to the plaintiff in a motion for summary judgment proceeding, the defendant must point out a lack of factual support for an essential element of the plaintiff's claim. See La. C.C.P. art. 966(C)(2). In this case, the opinion and testimony of Dr. William's, which must be accepted as competent testimony, as well as the testimonies of the medical doctors, establish factual support that there is a genuine issue of material fact regarding the medical causation of the decedent's illness. Since there is a material factual dispute created by the opinion of Dr. Williams and the testimonies of the medical doctors, the granting of the motion for summary judgment was improper. See Babin v. Winn-Dixie Louisiana, Inc., 2000-0078 (La. 6/30/00), 764 So.2d 37, 40 (per curiam); Hayes v. Autin, 96-287 (La. App. 3 Cir. 12/26/96), 685 So.2d 691, 694, writ denied, 97-0281 (La. 3/14/97), 690 So.2d 41.
At trial, the trier of fact can determine whether the Hickmans have carried their burden of proving through competent medical evidence that Riley's cancer was more likely than not caused by his smoking and whether his exposure to the radioactive material was or was not also a cause of his cancer. However, at summary judgment, the standard is only whether there is a material factual dispute creating a genuine issue of material fact as to whether Riley's exposure to radioactive material was a cause of his cancer. See Babin, 764 So.2d at 40. Therefore, we reverse the judgment of the district court granting Shell's motion for summary judgment and remand this matter for further proceedings in accordance with this opinion.
CONCLUSION
For the foregoing reasons, we maintain the appeal, deny the motion to dismiss, and reverse the judgment of the district court granting the motion for summary judgment in favor of Shell Oil Company, Shell Offshore Inc., and SWEPI LP dismissing the suit of Deborah Hickman, Belinda Hickman, Daniella Hickman, and Samantha Hickman. We grant the unopposed motion to supplement the record and the second unopposed motion to supplement the record. We remand this matter for further proceedings. Costs of this appeal are assessed against Shell Oil Company, Shell Offshore Inc., and SWEPI LP.
APPEAL MAINTAINED; MOTION TO DISMISS DENIED; UNOPPOSED MOTION TO SUPPLEMENT RECORD GRANTED; SECOND UNOPPOSED MOTION TO SUPPLEMENT RECORD
*1106 GRANTED; REVERSED AND REMANDED.

Most of the other defendants, if not all, have been dismissed from the suit.

For the purposes of this motion for summary judgment, it appears that Shell accepted the analysis and opinion of Dr. Williams and reserved the right to test her methodology and opinion in a La. C.C.P. art. 1425(F) motion.

The district court signed the judgment granting the motion for summary judgment and dismissing the Hickmans' suit on November 17, 2015; notice of the judgment of dismissal was mailed on November 23, 2015. The judgment denying the motion for new trial was signed on June 8, 2016, notice of the judgment was mailed on June 9, 2016, and the motion for appeal was filed on July 13, 2016.

We note that the Louisiana Code of Civil Procedure was amended by 2015 La. Acts, No. 422, § 1, effective January 1, 2016. Section 2 of the 2015 La. Acts, No. 422, provides that: "[t]he provisions of this Act shall not apply to any motion for summary judgment pending adjudication or appeal on the effective date of this Act." Here, the filing of the motion for summary judgment was filed before the effective date of 2015 La. Acts, No. 422. Thus, the former version of La. C.C.P. art. 966 applies to the instant matter.

A second unopposed motion to supplement the record was referred to this panel. The Hickmans sought to add Shell's reply to their memorandum in opposition to Shell's motion for summary judgment on medical causation and Shell's exhibits N-V to Shell's reply, both of which were filed in the district court, to the appellate record. We grant this unopposed motion.

See Footnote 2.

Louisiana Code of Civil Procedure article 1425(F)(2) provides that upon a timely filed and sufficiently alleged motion for a Daubert hearing, the court shall hold a contradictory hearing. At the hearing, the court shall consider the qualifications and methodologies of the proposed witness based upon the provisions of articles 104(A) and 702 through 705 of the Louisiana Code of Evidence. See Daubert, 509 U.S. at 579, 113 S.Ct. at 2786.